CLIFFORD M. HOUG AND MILDRED S. HOUG, PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2393–67. Filed April 20, 1970.

*David E. Agnew* and *Michael M. Sachs*, for the petitioners.
*Sheldon M. Sisson*, for the respondent.

OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in peti-
tioners' income tax for the year 1963 in the amount of $875.30. After
a concession by respondent, the only issue is whether a distribution to
petitioner in 1963 totaling $5,950.25 from a qualified profit-sharing
plan is to be treated as ordinary income or capital gain under section
402, I.R.C. 1954.[1]

All of the facts have been stipulated and they are so found.

Clifford M. Houg, who will be called petitioner, and his wife Mil-
dred S. Houg, resided in San Fernando, Calif., at the time they filed
their petition in this case. They filed their joint income tax return for
1963 with the district director of internal revenue in Los Angeles,
Calif.

General Controls Co., hereafter called General Controls, was a Cali-
fornia corporation engaged in the manufacture and sale of residential
and industrial heating and temperature control units.

On or about January 4, 1963, International Telephone & Telegraph
Corp. (ITT), a Maryland corporation, and General Controls entered
into an agreement to merge whereby ITT would be the surviving com-
pany. Under the agreement ITT was to receive all of the business and

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless
otherwise noted.

assets of General Controls and assume all of its liabilities. All outstanding shares of General Controls were to be exchanged for shares of ITT. The securities of both corporations were publicly held and listed on the New York Stock Exchange. A revenue ruling was requested and received to the effect that the transaction was a statutory merger and reorganization under section 368 (a) (1) (A).

On May 15, 1963, the merger became effective and the separate existence of General Controls ceased. Also, on that same date, ITT transferred all of the business and assets acquired from General Controls to its wholly owned subsidiary, ITT General Controls, Inc., a Delaware corporation, incorporated on April 19, 1963. All of the employees of General Controls, approximately 3,073, became employees of ITT General Controls, Inc. ITT General Controls, Inc., operated this business until it was liquidated into ITT in 1964.

General Controls, as early as October 24, 1940, had instituted a profit-sharing retirement income plan (plan) which was qualified under the predecessor section to section 401(a) and was exempt from taxation under the predecessor section to section 501(a).

The plan, as amended on May 7, 1957, provided, in part, for two trust funds: One to be known as the Employees' Fund and the other to be known as the Company Fund. All employees who were eligible to join the plan were required to make monthly contributions to the Employees' Fund in accordance with a schedule of around 2 percent of salary. These contributions were required to be invested in individual retirement income insurance policies which should include a minimum death benefit. An officer of General Controls was trustee of this fund holding the insurance policies. The trustee of the Company Fund was directed to "invest such part of the Company Fund as may from time to time be available for investment, in securities that are legal for the investment of trust funds in the State of California, including securities of the Company, such as, but not limited to, preferred stock, common stock and debentures, with adequate security."

The plan provided with respect to company donations, that the—

Company [defined as General Controls Co. in paragraph 2] shall as soon as practicable after the close of each calendar year commencing with the year 1944 donate to the Company Fund to be held by the Trustee from its net operating profits in the preceding year a sum equal to 15% of said net operating profits as defined under Section 2; [income remaining after payment of taxes, dividends, and some intercompany profits] * * *

At all times material, Title Insurance & Trust Co. was trustee of the Company Fund.

The plan as amended May 7, 1957, further provided, in part, that a participant who retired from employment with the company after attaining age 60 years or because of total disability or upon completion

of 25 years of continuous employment with the company should receive from the Company Fund a sum equal to 100 percent of his share of the company donations, i.e., his interest was "100% vested." Likewise in the event of death of a participant a sum of the Company Fund equal to 100 percent of his share in the fund was to be paid to any beneficiary. On any other termination of employment an employee was entitled only to 62½ percent of his share of the company donations, except in the case of retirement within 5 years of retirement age or within 5 years of completion of 25 years of service. All payments of benefits to employees were to be made on or before 1 year after the event of termination of employment.

Prior to the effective date of the proposed merger with ITT, H. C. Twiss, who was the assistant secretary and assistant treasurer of General Controls, prepared an amendment to the plan. He obtained a determination letter from the Internal Revenue Service dated May 3, 1963, which stated in effect that the plan as amended by the suggested amendment would continue to qualify under section 401(a), and the trust would continue to be exempt under section 501(a).

Thereafter, a letter was sent by General Controls to all of the members of the plan, advising them of the anticipated merger on May 15, 1963, and the proposal of the board of directors of General Controls Co., subject to the approval of IRS and 51 percent of the members, to amend the plan as set forth in the exhibit to this letter marked "Exhibit A."

The said Exhibit A was entitled the "Amended Profit Sharing Retirement Income Plan of General Controls Co." The preamble of the amended plan was as follows:

### PREAMBLE

GENERAL CONTROLS CO., a California corporation, is preparing to merge with and into International Telephone and Telegraph Corporation, a Maryland corporation, on or about May 15, 1963, and it is the intention of International Telephone and Telegraph Corporation that its wholly-owned subsidiary, ITT-General Controls Inc., a Delaware corporation, shall own and operate the business formerly carried on by General Controls Co. and that the employees of General Controls shall become employees of ITT-General Controls Inc., or in some instances employees of International Telephone and Telegraph Corporation.

This amended Profit Sharing Retirement Income Plan is intended to supersede, as of the effective date of the merger, the Profit Sharing Retirement Income Plan of General Controls Co. as adopted October 24, 1940 and as amended through May 7, 1957, and to constitute a continuation in amended and modified form of the said existing Plan insofar as participants therein are concerned. It is not intended, however, to terminate the Plan.

The amended plan went on to provide in article 6:

Anything herein to the contrary notwithstanding, neither General Controls Co. nor International Telephone and Telegraph Corporation nor ITT-General

Controls Inc., shall have any obligation to make good any deficit in the Company Fund, occurring for any reason whatsoever, or to make any donation to the Company Fund * * *

The parties have stipulated that the amended plan provided in part:

(a) that it was only to become effective upon the merger of General Controls into ITT.

(b) that all amounts previously donated by General Controls with respect to employees were to become 100% vested upon the merger becoming effective.

(c) that all insurance policies were to be distributed from the Employees' Fund to all members of the Plan as soon as practicable after the date of the merger.

(d) that any member of the Plan on May 15, 1963 could receive a distribution of his total interest from the Company Fund, valued as of May 15, 1963, within 90 days of June 30, 1963 if prior to June 15, 1963 he gave notice that he desired such a distribution.

(e) that any member not giving notice of his desire to receive a distribution could only receive a distribution on termination of his employment with ITT or ITT General Controls, Inc.

(f) that no further contributions to the Company Fund on behalf of any employee would be made.

(g) that no person could become a member of the Plan subsequent to May 15, 1963.

The amended plan was approved by a majority vote of the members (77%).

Under the provisions of the amended plan, ITT or its subsidiary could remove at anytime the trustee of the plan and could name a successor trustee and it could name three of the five members of the advisory board provided for under the plan. It also could, with 51 percent of the members of the plan, amend the plan and it had the authority to terminate the plan at any time.

The letter previously mentioned told the members they could receive 100 percent of their investment in the Company Fund if the merger went through and the amended plan was adopted but urged the employees not to ask for a distribution of their interest in the Company Fund. Also each member received a letter after the merger from the Advisory Board of the Amended Plan dated May 20, 1963, in which the board explained the effect of the amendment and recommended that the employees not withdraw their equity in the Company Fund. The letter also stated that the benefit payment to anyone who elects to receive his equity in the Company Fund "qualifies for long-term capital payments treatment—in other words, only half of the interest is subject to tax."

All members received distribution of their insurance policies from the Employees' Fund.

On May 15, 1963, there were approximately 1,155 members in the plan. Of these, 1,041 members made the written election to withdraw

their interest from the Company Fund and received payment in 1963. The remaining 114 members did not make an election to withdraw. At the time of the trial 36 members were still participants in the plan which was being administered by Title Insurance & Trust Co.

Petitioner was an employee of General Controls from November 7, 1940, to May 15, 1963, and thereafter was an employee of ITT General Controls, Inc., until it was liquidated in 1964. Petitioner was still in the employ of ITT at the time of trial.

Petitioner was a member of the plan from December of 1941 to May 15, 1963. Before June 15, 1963, petitioner gave notice of his desire to have the amounts accumulated for his benefit distributed to him.

During the year 1963, petitioner received cash from the Company Fund in the amount of $5,950.25 which was his total interest in the Company Fund.

During the year 1963, petitioner received his life insurance policy from the Employees' Fund which was his total interest in the Employees' Fund, the cash surrender value of which exceeded his contribution by $150. Petitioner cashed his insurance policy for its full cash surrender value during the year 1963.

Petitioner became a member of the ITT General Controls, Inc., Pension Plan for Salaried Employees as of the date it became effective, to-wit, May 15, 1963. This plan provided for retirement benefits for life for employees retiring after the required "credited" service with the employer contributing, on the basis of an actuarial calculation, the amount necessary to fund the retiring employees' benefit for life.

Respondent determined in his notice of deficiency that the distributions from these two trusts totaling $6,100.25 to petitioner constituted ordinary income rather than long-term capital gain, as reported by petitioner on his income tax return for 1963. Respondent now concedes that the $150 distributed from the Employee Fund trust is properly taxable as long-term capital gain. This leaves in issue the $5,950.25 distributed to petitioner which was his share of the Company Fund.

The issue is whether a distribution to petitioner from a qualified profit-sharing plan is to be treated as ordinary income or capital gain within the meaning of section 402(a)(2). This section provides, in pertinent part, that a lump-sum distribution from a qualified plan should be treated as capital gain if the distribution is paid "on account of the employee's death or other separation from the service" of his employer.[2]

---

[2] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

    (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

   \*        \*        \*        \*        \*        \*        \*

    (2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employee's trust described in section 401(a), which is exempt from tax under section

At the time of the submission of this case respondent's counsel reviewed certain so-called "general principles" that are announced in the cases involving the taxability of distributions under employees' trusts under sec. 402(a)(2). He then narrowed the issue in this case by stating:

Accordingly, for the purpose of this case, the respondent agrees:

1. Clifford M. Houg was separated from the service of General Controls Company.

2. There has been a change in the identity of the petitioner's corporate employer.

3. There was a change in the beneficial ownership of the petitioner's new employers—ITT General Controls and ITT.

Petitioner's counsel has been advised that the Commissioner will not argue in this case that a change in the makeup of employees must be shown.[3]

Petitioner argues his separation from the service of General Controls constitutes the required separation from the service of his employer.

The ultimate fact respondent asks us to find is that "The Company Fund was not terminated at the time of the merger and was adopted and continued by ITT General Controls." Respondent's main argument is that since the Company Fund plan was adopted and continued by petitioner's new employer he must show a separation of service from his new employer in order to qualify under section 402(a)(2).

Under the plan as it existed before the merger the employees contributed around 2 percent of salary to the Employees' Fund and General Controls was obligated to donate annually 15 percent of its net operating profits to the Company Fund and all employees completing 2 years in continuous service were eligible to participate in the plan.

No such finding that the profit-sharing plan was continued and adopted by the new employer could be made on the stipulated facts of this case. The only authority cited in respondent's brief on the issue is *E. N. Funkhouser*, 44 T.C. 178 (1965), aff'd. 375 F. 2d 1 (C.A. 4, 1967). The case holds that when there is an adoption and continuation of the old employer's pension plan the employee who continues on with the new employer must show that he was separated from the service of the new employer. In *Funkhouser* there was a contractual arrangement whereby the new employer assumed the obligations of the old employer with respect to its pension trust agreement. Here there is no evidence of any assumption by the new employer of any of the obligations of the old employer with respect to the Company Fund

---

501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, * * * the amount of such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

3 This makes unnecessary a discussion of *Victor S. Gittens*, 49 T.C. 419. See also *Whiteman Stewart*, 53 T.C. 344, 348 (fn. 5).

plan. Indeed, there is in the amended plan clear statements that "neither General Controls Co. nor International Telephone and Telegraph Corporation nor ITT-General Controls Inc., shall have any obligation to make good any deficit in the Company Fund, occurring for any reason whatsoever, or to make any donation to the Company Fund." The amended plan specifically provided that on the date it became effective by the merger there would be no more members, no more donations to the Employees' Fund, and no more donations to the Company Fund by the old employer, or the new employer.

We hold the plan was not adopted or continued by the new employer and therefore the separation from service requirement is satisfied if petitioner was separated from service of his old employer, General Controls. The phrase "separation from the service" means separation from the service of "his employer." *Edward Joseph Glinske, Jr.*, 17 T.C. 562. The only employer here under the plan was General Controls. Respondent concedes that petitioner was separated from the service of General Controls, which is consistent with the position he took in Rev. Rul. 58-383, 1958-2 C.B. 149. That company ceased to exist upon the merger.

Petitioner is supported by our holding in *Mary Miller*, 22 T.C. 293 (1954), affd. 226 F. 2d 618 (C.A. 6, 1955). There the taxpayer was an employee of a corporation which was acquired by another corporation which did not adopt the pension plan of the acquired corporation. The taxpayer became an employee of the acquiring corporation at the time of the acquisition and received a lump-sum distribution from the plan of the acquired corporation of his share in the plan. The holding was that on the day of the merger when he severed connections with his former employer there was a separation from the service of that employer and the payment was on account of that separation from the service making the said distribution eligible for capital gains treatment under the predecessor to section 402(a)(2). There, as here, the acquiring corporation did not assume any obligations of the acquired corporation under the plan. There, as here, the acquired corporation alone was the employer under the plan. The plan was not adopted in *Miller* and it cannot be said it was adopted in the instant case. The result should be the same. We hold for petitioner on the issue.

Respondent on brief makes an alternative argument that "The distribution of an employee's interest in a profit sharing plan is not 'on account of' a separation from service where both the employer and administrator of the plan urge the separated employee to permit his funds to remain in the plan."

The alternative theory is not supported by any reasonable argument or authority. The fact that petitioner and over a thousand other employees did not heed the offered advice is completely irrelevant. The

gratuitous advice that was offered does not alter the fact that the right to receive the distribution arose on account of the separation from the service of his employer.

We hold the distribution from the plan was rightly treated by petitioner as capital gains under section 402(a)(2).

*Decision will be entered for the petitioners.*