Jack L. **WYSONG** and Janet L. **Wysong**,
Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

No. 2–70 Civ. 168.

United States District Court,
D. Minnesota,
Second Division.

March 25, 1971.

Benjamin Vander Kooi, Luverne, Minn., for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and Risdon C. Ackerman, Attys., Dept. of Justice, Washington, D. C., appeared for defendant.

ORDER AND MEMORANDUM DISMISSING PLAINTIFFS' COMPLAINT AND ORDERING JUDGMENT FOR DEFENDANT

NEVILLE, District Judge.

The above case was presented for decision to the court, with jury waived, on stipulated facts and briefs in lieu of a trial.

Benjamin Vander Kooi of Luverne, Minnesota appeared for plaintiff; Johnnie M. Walters, Assistant Attorney General, Donald R. Anderson and Risdon C. Ackerman, attorneys from the Department of Justice, appeared for the government.

Though this suit is not brought as a class action, plaintiff Jack Wysong[1] is one of a number of former employees of Mid Packing Company of Luverne, Minnesota who were beneficiaries and distributees of a non-contributing profit sharing plan which was terminated in 1967. The action is a pilot case which it is thought might establish a precedent governing the cases of other recipients of

1. Wysong's wife is made a party plaintiff because she joined with her husband in filing a joint income tax return for 1967.

termination payments under the said plan. This court has jurisdiction under 28 U.S.C. § 1346(a) (1).

Plaintiff, in the calendar year 1967, received $648.29 as his distributive share of the corpus held in trust under the profit sharing plan. He and his wife did not include this distribution in their 1967 income tax return. This resulted in the imposition of an additional assessment in the amount of $110.32, which plaintiffs paid. Upon a denial of their claim for refund of one-half thereof, i. e., $55.11, this action was commenced to recover the latter amount. The essence of plaintiffs' claim is that they are entitled to capital gains treatment as to the distribution of $648.29.

Stated in more detail, the following facts appear:

In the years prior to 1966, Mid Packing Company ("Mid") was engaged in the beef-killing and processing business in Luverne, Minnesota. This corporation was a wholly owned subsidiary of Sioux Quality Packers, Inc. ("Sioux"), of Sioux City, Iowa. On October 28, 1966, Iowa Beef Packers ("Iowa") acquired Mid by purchase of all the capital stock of Mid from Sioux. On February 28, 1967, Mid was dissolved by resolution of its shareholders and its assets were transferred to Iowa.

Since November 3, 1964, Mid had maintained a profit-sharing plan for its employees which required and received no contribution from the employees. The plan was qualified under Internal Revenue Code Section 401(a) and was exempt from tax under Section 501(a). On October 27, 1966, attendant upon and incident to its acquisition by Iowa, Mid's directors passed a resolution specifically continuing the trust, but terminating Mid's obligation to contribute thereto. On March 15, 1967 Iowa's directors passed a resolution specifically adopting the Mid profit-sharing plan then in existence.

In May, 1967, several months after Mid's dissolution, a representative of Iowa came to the Luverne plant to discuss the future of the profit-sharing plan with the former Mid employees, apparently all of whom except perhaps the plant manager and the plant superintendent had continued as employees of Iowa and in substantially their same capacities. Having been apprised of several alternatives,[2] including one which would continue the trust and provide for payment of funds to each employee upon death, retirement, or disability,[3] the employees overwhelmingly voted to terminate the plan and to distribute the funds forthwith and not wait for death, retirement, or disability or other separation. In July, 1967, the former employees of Mid were advised by the trustee of their prorata distributive shares under the terminated plan.

Plaintiff Jack L. Wysong, who had been a Mid employee and participant in its qualified profit-sharing plan since August 23, 1965, terminated his employment with Iowa at the Luverne plant on August 28, 1967, subsequent to both the acquisition of Mid by Iowa and the decision by the former Mid employees to terminate the plan. He received full distribution of his share when the fund was distributed by the trustee on November 15, 1967.

Counsel agree that the case involves a single question of law; to-wit, whether Section 402(a) (2) of the Internal Revenue Code permits capital gain treatment of the distribution here at issue.

The applicable statutes read as follows: (emphasis added)

26 U.S.C. Sec: 402. *Taxability of Beneficiary of Employees' Trust.*

(a) [as amended by Sec. 2(a), Act of April 22, 1960, P.L. 86–437, 74

---

2. The alternatives were (1) to leave the plan dormant and make distribution to the employees as they died, retired or became "separated from the service," (2) to transfer the funds to Iowa's plan, and

(3) to terminate the plan and distribute the funds forthwith.

3. i. e., "separation from the service" of the successor employer, Iowa, within the meaning of Section 402(a) (2).

Stat. 79]. *Taxability of Beneficiary of Exempt Trust.*—

(1) *General rule.*—Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities). \* \* \*

(2) *Capital gains treatment for certain distributions.*—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee *on account of the employee's death or other separation from the service,* or on account of the death of the employee after his separation from the service, the amount of such distribution \* \* \* shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. \* \* \*

\* \* \* \* \* \*

(c) Certain Plan Terminations.— For purposes of subsection (a) (2), distributions made after December 31, 1953, and before January 1, 1955, as a result of the complete termination of a stock bonus, pension, or profit-sharing plan of an employer which is a corporation, if the termination of the plan is *incident to the complete liquidation,* occurring before the date of enactment of this title, of the corporation, whether or not such liquidation is incident to a reorganization as defined in section 368(a), shall be considered to be distributions on account of separation from service.

Section 402(e), as above quoted, expressly permits capital gain treatment under Section 402(a) (2) of distributions made pursuant to the complete termination of certain profit-sharing plans incident to a corporate liquidation though such treatment is limited by that section to "distributions made after De-

cember 31, 1953, and before January 1, 1955." (i. e. during 1954).

It is quite clear to the court that had the profit-sharing plan beneficiaries elected to wait until "separation from the service" of Iowa by death, retirement, disability or otherwise each, as such event occurred in his case, would have been entitled to capital gains treatment as to the lump sum payment received in one calendar year. Conversely it is also quite clear to the court that had there been no merger between Iowa and Mid, a voluntary termination of the profit-sharing plan by Mid as a going concern and a lump sum distribution in one calendar year would have resulted in ordinary income to each distributee. In between these two poles falls the instant case, the answer to which is found in 402(e), adopted as a part of the 1954 Revenue Code. Prior thereto, Internal Revenue rulings, Tax Court and United States Court decisions allowed capital gain treatment for amounts received under terminated profit-sharing plans "where incident to the complete liquidation \* \* \* of the corporation." The enactment of 402(e) continued this interpretation for the year 1954 but because it so continued it for that year only, the negative pregnant has been adopted that after 1954 such privilege no longer obtains. This memorandum opinion cannot possibly add to the legal lore and literature on the subject matter here involved by any extended discussion. Two decisions of the Eighth Circuit Court of Appeals are squarely on the point and hold against the allowance of capital gains treatment of such distribution as here involved, United States v. Martin, 337 F.2d 171 (8 Cir. 1964); United States v. Haggart, 410 F.2d 449 (8 Cir. 1969). A particularly well written and explanatory opinion of this very technical subject is found in United States v. Johnson, 331 F.2d 943 (5 Cir. 1964). Judge Wisdom therein discusses the rationale behind the denial of capital gains treatment in a case such as at bar, quotes at length from the Congressional history of the enactment of Sec. 402(e) and appraises and to a large extent dis-

cards certain equivocal Internal Revenue Service rulings. Since this opinion was expressly blessed by the Eighth Circuit in *Haggart, supra,* it will accomplish little to spend pages here reiterating what has been so well stated on the subject in these three opinions. This court is bound by Eighth Circuit decisions and whatever appeal there may be to any of the plaintiffs' arguments, they cannot be adopted. Plaintiffs rely on a tax court case, Houg v. Commissioner of Internal Revenue, 54 T.C. 792 (April 20, 1970) and again cite certain Internal Revenue rulings. All this court can say is that these same arguments were met and squarely quashed most recently in *Haggart, supra,* and that decision clearly controls this court.[4]

Plaintiffs' counsel also attempts to demonstrate that there has been a "substantial change in the make-up of employees." The court finds against this contention in view of the fact that after the merger only two supervisory employees were changed and one added according to the facts contained in the deposition, stipulation and pleadings. All the other employees, including plaintiff Wysong continued at their same jobs under the same conditions, save only that their paychecks emanated from a different source and the name of their employer was changed. As far as the employees were concerned, business went on as usual, at least as to the 18 "luggers" of which plaintiff was one and also for the most part as to all of their superiors.

The government would ask this court to rule in effect that *all* post-1954 distributions are not entitled to capital gain treatment if the distribution results from the termination of a profit-sharing plan incident to the complete liquidation of a corporation. We need not go that far in this case because *a la Haggart* there was here as there no substantial change in the make-up of employees and no substantial change in the employment relationship after the acquisition and liquidation. This court does hold, however, that there was no "separation from the service" within the meaning of Section 402(a) (2) which caused the distribution to plaintiff Wysong; rather it was the voluntary vote of the employees to terminate the plan. The plan was terminated, not the employment. See 3 A.L.R.Fed. 724; Smith v. United States, 328 F.Supp. 1224 (M.D.Tenn., February 18, 1971).

Substantial doubt exists as to whether the plan in a technical sense was in any event terminated as an incident to the liquidation of Mid, or whether it wasn't rather terminated by the voluntary action of the participating employees long after the acquisition by Iowa and after the May, 1967 meeting. It can, of course, be said that the termination probably was triggered by the liquidation and the acquisition of Mid by Iowa. The court need not reach this question nor make any finding thereon, however, in view of what has been said above and the clear umbrella of *Haggart, Martin* and *Johnson* under which this case is sheltered. Nor does the fact that in August, 1967, plaintiff Jack Wysong retired from his employment with Iowa, some three months after it had been determined to terminate the plan, alter what has been said hereinabove, nor the conclusion heretofore reached. His distribution came as the result of the plan's termination as to all beneficiaries, not as the result of his later individual action in leaving the employment of the successor corporation, Iowa.

This memorandum opinion will serve as formal findings of fact, as required and permitted by Rule 52 of the Federal Rules of Civil Procedure and the Clerk of this court is ordered to enter a judgment for defendant dismissing plaintiffs' complaint on the merits.

Let judgment be entered accordingly.

---

4. *Houg* can, in fact, be distinguished from the case at bar for there both parties stipulated that plaintiff was in fact "separated from the service," of the dissolved and disappearing corporation, which is not factually so in the case *sub judice*. In any event, to the extent, if at all that *Houg contravenes Haggart,* it must be disregarded.