AILEEN COOPER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent KATIE LASSITER, Petitioner v. CMOOISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket Nos. 6149-73, 7090-73.
United States Tax Court
T.C. Memo 1975-263; 1975 Tax Ct. Memo LEXIS 109; 34 T.C.M. (CCH) 1134; T.C.M. (RIA) 750263; August 12, 1975, Filed Alan C. Housholder and Quentin L. Housholder for the petitioners. Wm. Robert Pope, Jr. for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: The Commissioner determined deficiencies in Federal income tax for 1971 in the following amounts: Petitioner
Deficiency
Aileen Cooper
$1,091.67
Katie Lassiter
963.60 These cases were consolidated and submitted as fully stipulated under Rule 122, Tax *111 Court Rules of Practice and Procedure. The sole issue for decision is whether the lump-sum distribution of the petitioners' total shares from an employees' profit sharing trust was ordinary income or capital gain under sections 402(a) (1) and (2). [1]
The stipulation of facts filed by the parties, together with accompanying exhibits, are incorporated herein by reference. Petitioner Aileen Cooper is an individual who resided in Joelton, Tennessee, at the time of filing the petition in this case. Petitioner Katie Lassiter is an individual who, at the time of filing the petition, maintained a residence in Nashville, Tennessee. For the taxable year 1971 each petitioner filed an individual Federal income tax return with the District Director of Internal Revenue, Memphis, Tennessee. Petitioners were employees of the Kroger Company and participants in the Kroger Employees' Savings and Profit Sharing Plan (hereinafter the Plan), a qualified plan within the meaning of section 401(a). The Plan provided for a trust to administer funds coming into the plan; income *112 earned by the trust was exempt from taxation under section 501(a). The pertinent provisions of the Plan were as follows: The Kroger Co. Employees' Savings and Profit Sharing Plan The Plan
The Kroger Co., an Ohio corporation, hereinafter called the "Company" does hereby establish and adopt the following Employees' Savings and Profit Sharing Plan, hereinafter called the "Plan." 2. Effective Date. The Plan shall become effective on January 1, 1952… 3. Administration. (Trustees) The funds created hereunder shall be administered by three Trustees… The duties and responsibilities of the Trustees are set forth in the Trust Agreement… 5. Membership. (Employee Deposits) Eligible employees may become members of the Plan by filing a written application authorizing the Company to withhold from applicant's pay and deposit with the Trustees an amount which shall not exceed 5% of the applicant's regular weekly salary… (Withdrawal) A member may withdraw from the Plan at any time by filing… a notice of withdrawal. Retirement under the Kroger Retirement Program or separation from the employment after age 60 shall automatically constitute withdrawal from *113 the Plan as of the last day of the year in which such retirement or separation occurs; provided that any member so retired or separated may withdraw from the Plan prior to the last day of such year by filing… a notice of withdrawal. Death prior to retirement, total and permanent disability or separation from employment otherwise than in connection with the member's retirement under the Kroger Retirement Program or his separation after age 60 shall automatically constitute withdrawal from the Plan as of the date of such occurence. 6. Employees' Savings Fund. (Fund A) The fund of cash and investments, the earnings thereon and the proceeds thereof, created by employee deposits, shall be known as "Fund A", and the amounts or share therein assigned to the members as hereinafter provided shall be known as "A Credits." In each year after 1952 the portion of Fund A attributable to current deposits in such year shall be segregated from the balance of Fund A until the close of such year. (Assignment of A Credits) As of the close of 1952 Fund A shall be appraised by the Trustees and A Credits equivalent to such appraised value shall be assigned to the members in proportion to the amounts *114 deposited by each in such year. As of the close of each succeeding year Fund A, excluding the segregated portion thereof attributable to current deposits, shall be appraised, taking into account the earnings thereon and capital gains and losses, whether or not such capital gains and losses have been realized. Theaggregate of A Credits assigned and adjusted as of the close of the preceding year and still outstanding shall then be divided into such appraised value. The quotient, expressed in terms of percentage, shall then be applied to each member's A Credits, assigned and adjusted as of the close of the preceding year, and each member's A Credit account shall be adjusted upward or downward accordingly. The segregated portion of Fund A attributable to current deposits shall then be appraised as of the close of such year and additional A Credits equivalent to such appraised value shall be assigned to the members in proportion to the amounts deposited by each in such year. 7. Company Contribution. (Profit Sharing Formula). (Determination) Within sixty days following the close of each year, the Company shall deliver to the Trustees its contribution, if any, for such year… *115 8. Company Contribution Fund. (Fund B) The fund of cash and investments, the earnings thereon and the proceeds thereof, created by Company contributions, shall be known as "Fund B," and the amounts or shares therein assigned to the members as hereinafter provided shall be known as "B Credits." (Assignment of B Credits) As of the close of 1952, B credits equivalent to the Company contribution for such year, after deducting all costs of administration chargeable thereto, shall be assigned to the members in proportion to the amounts deposited in Fund A by each in such year. As of the close of each succeeding year Fund B, excluding therefrom the Company contribution, if any, for the current year, shall be appraised by the Trustees, taking into account the earnings thereon and capital gains and losses, whether or not such capital gains and losses have been realized. The aggregate of B credits assigned and adjusted as of the close of the preceding year, reduced by the preceding yearend value of the vested B Credits redeemed during the year, shall then be divided into such appraised value. The quotient, expressed in terms of percentage, shall then be applied to each member's B Credit *116 account assigned and adjusted as of the close of the preceding year and still outstanding, excluding forfeited credits, and each such account shall be adjusted upward or downward accordingly. Additional B Credits equivalent to the Company contribution for the current year, if any, after deducting all costs of administration chargeable thereto, plus the amount of such appraised value properly allocable to provisional B Credits forfeited by withdrawals during the year, shall then be assigned to the members in proportion to the amounts deposited in Fund A by each in such year. (Vesting Provisions) The assignment of B Credits shall be provisional until the same become vested. The amount of each member's B Credits which shall be "vested", and therefore subject to payment or redemption on withdrawal, shall be determined in accordance with the following provisions: (a) If withdrawal shall result from the member's death, total and permanent disability, retirement under the Kroger Retirement Plan or separation from the employment after age sixty… all "B" Credits theretofore provisionally assigned to the member shall immediately become vested… 9. Redemption of Credits. (Withdrawal *117 at close of year) Upon withdrawal from the Plan on the last day of any year, the assignment of the member's credits as of the close of such year shall proceed as hereinbefore provided as though he had not withdrawn, and as promptly as possible after the close of such year, the member, or in the case of his death or legal disability his beneficiary or personal representative, shall be paid in one sum the amount of his A Credits and vested B Credits assigned as of the close of such year. (Withdrawal during year) Upon withdrawal from the Plan during any year and prior to the last day thereof, the member, or in the case of his death or legal disability his beneficiary or personal representative, shall be paid in one sum the amount of his A Credits and vested B Credits assigned as of the close of the preceding year, subject to adjustment as hereinafter provided, plus his deposits for the current year. Upon such withdrawal, the member shall receive no credit, provisional or vested, in the Company contribution, if any, for the current year, or for any provisional B Credits forfeited upon the withdrawal of other members during the current year…. 12. Termination. The Company reserves *118 the right to terminate the Plan and its obligation to make contributions thereto as of the close of any month. Written notice of such termination shall be filed with the Trustees… not less than thirty days before the termination date… (Liquidation) The A and B Credits to which each participating member is entitled shall be finally determined as of the date of termination. The Trustees shall thereupon proceed with the orderly liquidation of the two funds and shall make distribution thereof in cash, either at one time or installments over a period not to exceed five years, among the members as of the date of termination, the A Fund in proportion to such A credits, and the B Fund in proportion to such B Credits without regard to whether the same are vested or provisional…. In December of 1969 members of the Plan were informed that termination of the Plan was under serious consideration. At its meeting on September 18, 1970, the Kroger Company Board of Directors approved termination of the Plan effective January 2, 1971. Petitioners had no right to participate in the decision to terminate the Plan and did not participate in any way in that decision. Thereafter, the assets of *119 the trust set up pursuant to the Plan were liquidated in an orderly manner. The proceeds received from the sale of the assets were immediately reinvested by the trust in interest bearing United States Treasury bills. The funds remained invested until March 25, 1971, when a cash lump-sum distribution was made to all participants. Petitioners had been employed by the Kroger Company for several years prior to 1971, and continued as employees of Kroger after the termination of the Plan. Petitioners' participation in the Plan was discontinued, and the lump-sum distribution made, solely because of the decision of the Kroger Board of Directors to terminate the Plan and not by reason of death or separation from the service of Kroger. As a result of the Plan's termination petitioner Cooper received a distribution of $12,931.54, and petitioner Lassiter received $13,353.98. These sums represented petitioners' total interests in the assets of the Plan. During the period of their participation petitioner Cooper had contributed $4,418.50 to the Plan, and petitioner Lassiter had contributed $4,595.50. Petitioners reported the amounts exceeding their contributions ($8,513.04 and $8,758.48, respectively) *120 as long term capital gains on their 1971 Federal income tax returns. Respondent determined that these amounts were taxable as ordinary income under section 402. [2]
*121 Petitioners contend that these receipts were not "actually distributed or made available" to them "by an employee's trust described in Section 401(a)," and therefore are not subject to the provisions of sections 402(a)(1) and (2). They argue that the trust, being part of the Plan, was terminated when the Plan was terminated on January 2, 1971. The effect of the termination of the trust, they contend, was to bring to a conclusion the separation of the legal title and equitable ownership, with the title, corpus, and principal, including accumulations of income, passing to the beneficiaries. Thus, they conclude, the exempt trust did not actually distribute funds to them; instead the funds passed by operation of law upon termination of the Plan. Petitioners argue that therefore sections 402(a)(1) and (2) are inapplicable, and that the lump sum distribution should be treated as gain from the sale or exchange of a capital asset held for more than six months andtaxed according to the provisions of section 1202. Petitioners cite no authority in support of these contentions. The theory is an interesting one but this Court must agree with the respondent that it is untenable. At the outset, *122 we can find no evidence to support petitioners' assertion that the trust was terminated as of January 2, 1971. Petitioners apparently assume that because the Plan was terminated as of that date, the trust was also terminated, an assumption not supported by the record. The Plan provided that upon termination "(the) Trustees shall proceed… with the orderly liquidation of the two funds and shall make distributions thereof in cash…" A trust ordinarily does not automatically terminate because the time for distribution has arrived. The duties and powers of the trustee do not immediately cease, but he retains such duties and powers as are necessary for the winding up of the trust. The trust is terminated only when the trustee has finally accounted and conveyed the trust property to the persons entitled to it on termination to the trust. Commissioner v. Davis,132 F. 2d 644, 646 (1st Cir. 1943); Bryant v. Commissioner,185 F. 2d 517, 519 (4th Cir. 1950); Bogert, Trusts and Trustees § 1010 (2d ed. 1962); 4 Scott, Trusts § 344 (3rd ed. 1967). Generally the legal title to the trust property does not vest automatically in the persons beneficially *123 entitled to it upon termination of the trust, but remains in the trustee until he makes a conveyance or distribution of it. 4 Scott, supra § 345. We believe the general principles of trust law elucidated above are especially applicable in the instant case, where the trustees upon termination of the Plan had the express duty of proceeding with the orderly liquidation and distribution of the trust assets. Petitioners have cited no authority to the contrary. We therefore conclude, for purposes of the issue before us, that the trust was not terminated until March 25, 1971, the date when final distribution was made, and that these lump sum payments were distributed to petitioners by an exempt employees' trust within the meaning of sections 402(a)(1) and (2). The facts of these cases establish that the termination of the Plan was the sole cause of the distributions to petitioners. Section 402(a)(2) permits capital gains treatment only in cases where the distribution is made on account of death or other separation from the service of an employer. Where termination of the plan was the only cause of the distribution, section 402(a)(1) has consistently been applied with the result that *124 distributions in excess of employee contributions are ordinary income. United States v. Johnson,331 F. 2d 943 (5th Cir. 1964); Wysong v. United States,326 F. Supp. 1384 (D. Minn. 1971); Beecher v. United States,226 F. Supp. 547 (N.D. Ill. 1963); Estate of Robert A. Stefanowski,63 T.C. 386 (1974); Maurice Osterman,50 T.C. 970 (1968); Estate of George E. Russell,47 T.C. 8 (1966); Jack E. Schlegel,46 T.C. 706 (1966). We cannot accept petitioners' contention that the distributions in question should be regarded as gains from the sale or exchange of an asset held for more than six months, and therefore taxed according to the provisions of section 1202. It is well accepted that a specific statute controls over a general one, without regard to priority of enactment. Bulova Watch Co. v. United States,365 U.S. 753, 758 (1961); Service Life Insurance Co. v. United States,293 F. 2d 72, 76 (8th Cir. 1961); State Mutual Life Assurance Co. v. Commissioner,246 F. 2d 319, 323 (1st Cir. 1957), affg. 27 T.C. 543 (1956); *125 Marian Essenfeld,37 T.C. 117, 122 (1961), affd. 311 F. 2d 208 (2d Cir. 1962). Congress has specifically provided that, except in those instances described in section 402(a)(2), distributions by employees' trusts will be taxed as ordinary income, a provision we think is controlling in the cases before us. Undoubtedly petitioners will consider the result we reach herein to be a harsh one. Petitioners did not and indeed could not participate in the decision to terminate the Plan, which decision led to the lump sum distribution to them and to a large increase in their taxable income for 1971. There is no apparent reason why some lump sum distributions should be accorded capital gains treatment whereas others are regarded as ordinary income. But as the Fifth Circuit has aptly pointed out: There is no doubt that the policy argument in favor of capital gains treatment of "bunched" income is as applicable to liquidating payments on termination of a plan as it is to lump sum payments on separation from service. But participants in employees' trusts enjoy a favored position over other taxpayers difficult to rationalize. If they are to be further favored by *126 extension of capital gains treatment to liquidating payments received on any termination of a plan, Congress is the one to do it and say so plainly. United States v. Johnson,supra, at 954. In the Employee Retirement Income Security Act of 1974 (P.L. 93-406, 88 Stat. 990) Congress acted to eliminate this inequity, not by expanding capital gains treatment to plan termination cases, but by prospectively denying capital gains treatment to all lump-sum distributions. See section 402(a)(2), as amended. If Congress had acted otherwise our decision would be the same, for the result we have reached herein is mandated by the statute as it existed during the taxable year in issue. Decision will be entered for the respondent.
T.C. Memo. 1975-264
KAY A. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Docket No. 2597-75 August 12, 1975. Kay A. Miller, pro se. William E. Saul, for the respondent. MEMORANDUM OPINION DAWSON, ChiefJudge: This motion to dismiss for lack of jurisdiction was assigned to and heard by Commissioner James M. Gussis. The Court agrees with and adopts his opinion which is set forth below. [1]
*127 OPINION OF THE COMMISSIONER This matter is presently before the Court on respondent's motion to dismiss for lack of jurisdiction filed on April 23, 1975. Petitioner filed a response to respondent's motion on May 23, 1975, and the case was called for hearing on June 30, 1975. Respondent appeared by his counsel who argued in support of his motion. Petitioner appeared prose and presented to the Court her arguments opposing said motion. Respondent's motion is predicated on the ground that the petition was not filed within the time prescribed by statute. Section 6213(a) of the Internal Revenue Code of 1954 provides that a taxpayer may file a petition with the Tax Court within 90 days after the mailing of a notice of deficiency addressed to him. If the petition is not filed within the prescribed period of time, this Court has no jurisdiction. Baker L. Axe,58 T.C. 256 (1972). Section 7502(a)(1) provides that if any document required to be filed within a prescribed period under authority of any provision of the internal revenue laws is, after such period, delivered by the United States mail to the office with which such document is required *128 to be filed, the date of the United States postmark stampted on the cover in which such document is mailed shall be deemed to be the date of the delivery of the document. Section 7502(a)(2) requires that the postmark date be a timely one and that the document was deposited in the mail in the United States in an envelope "properly addressed" to the office with which the document is required to be filed. Respondent mailed a statutory notice of deficiency to petitioner on September 23, 1974. A petition was filed with the Tax Court on January 6, 1975, which date is 105 days after the mailing date of the notice of deficiency. The envelope containing the petition was postmarked December 31, 1974. Petitioner stated to the Court that on December 18, 1974, she learned that her accountant had taken no action with respect to the notice of deficiency and that he no longer wished to represent petitioner in the matter. On December 19 petitioner sent a telegram to the "IRS DISTRICT TAX COURT" in San Francisco, California, requesting an appointment with respect to the statutory notice of deficiency. The telegram was returned to her and the record shows that it was eventually filed with the Tax Court *129 as a petition on January 6, 1975. We must hold under the above facts that the petition was not timely filed. Section 6213(a) specifically requires that the petition must be filed "with the Tax Court." [2] Consequently, the telegram dated December 19, 1974, which was incorrectly addressed to the Internal Revenue Service in San Francisco does not meet the 90-day filing requirement of the statute. Baker L. Axe,supra;Earl H. C. Lurkins,49 T.C. 452 (1968). Moreover, it is obvious that the telegram dated December 19, 1974, does not qualify under the clear and explicit language of section 7502(a)(1). It will suffice to say that the absence of a "properly addressed" envelope renders the provisions of section 7502(a)(1) inapplicable. Earl H.C. Lurkins,supra.Here, the envelope in which the petition was ultimately delivered to the Tax Court was postmarked December 31, 1974, which date was not within the 90-day statutory period. Petitioner states *130 that her difficulties were created by the laxness of her representative in pursuing the tax matters entrusted to him. However, as we said in Baker L. Axe,supra, "[we] have no authority to extend the period provided by law for filing a petition with the Tax Court whatever the equities of a particular case may be and regardless of the cause for its not being filed within the required period." Under the circumstances we hold that the petition was not timely filed. Consequently, respondent's motion to dismiss for lack of jurisdiction will be granted. An appropriate order will be entered.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Sec. 402. Taxability of Beneficiary of Employees' Trust. (a) Taxability of Beneficiary of Exempt Trust. (1) General Rule.--Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities)…. (2) Capital gains treatment for certain distributions. --In the case of an employee's trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee… shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months…. (3) Definitions. -- For purposes of this subsection --… (C) The term "total distributions payable" means the balance to the credit of an employee which becomes payable to a distributee on account of the employee's death or other separation from the service, or on account of his death after separation from the service.↩
1. Since this is a preliminary jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances.
2. Rule 22, Tax Court Rules of Practice and Procedure↩, provides that any pleadings or other papers to be filed with the Court must be filed with "the Clerk in Washington, D.C."