WHITEMAN STEWART, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1954–68.    Filed November 26, 1969.

Whiteman Stewart, pro se.
*Robert J. Curphy*, for the respondent.

### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency of $832.11 in petitioner's income tax for the year 1965. Respondent concedes that petitioner is entitled to a credit of $676.10 for tax withheld but not claimed by petitioner on his original return for 1965. The sole issue for decision is the proper tax treatment of a lump-sum distribution to petitioner from a qualified profit-sharing trust maintained by his employer.

All of the facts are stipulated.

Petitioner was a legal resident of San Antonio, Tex., at the time his petition was filed. He filed an original and an amended income tax return for 1965 with the district director of internal revenue, Austin, Tex. (hereinafter referred to as the district director).

Petitioner has been employed by Ed Friedrich, Inc. (hereinafter the company), or its successors continuously from the early 1940's to the date of the trial. On May 18, 1954, the company adopted the Ed Friedrich, Inc. Profit Sharing Plan (hereinafter the Friedrich Plan), with an effective date of October 31, 1954. This plan was incorporated into a trust agreement styled the Richard H. Friedrich Profit Sharing Trust (hereinafter the Friedrich Trust). The district director issued a ruling letter to the effect that the Friedrich Plan constituted a qualified plan under the provisions of section 165(a), I.R.C. 1939, and section 401(a),[1] and that the trust therefore was exempt from income tax under the provisions of section 501(a) and its predecessors.

Petitioner was a qualified participant in the Friedrich Plan and the Friedrich Trust.

On January 2, 1961, Ling-Temco-Vought, Inc. (hereinafter LTV), purchased all of the outstanding shares of stock in the company and thereafter operated the company as a subsidiary. Petitioner and all of the company employees retained their employment subsequent to LTV's acquisition of the company stock.

The Friedrich Plan and the Friedrich Trust were continued without change until August 9, 1962. On that date the company amended and restated the Friedrich Plan as two retirement plans, entitled the Retirement Plan for Bargaining Unit Employees of Ed Friedrich, Inc. (hereinafter the retirement plan), and the Retirement Plan for Nonbargaining Unit Employees of Ed Friedrich, Inc. The effective date of the amendment was January 1, 1962. The district director issued a ruling letter to the effect that the retirement plan qualified under the provisions of section 401(a) and that the related trust therefore was exempt from income tax under the provisions of section 501(a).

Also on August 9, 1962, the company entered into a trust agreement with the First National Bank of Dallas, Texas, wherein that bank replaced the former trustees of the Friedrich Trust.

Petitioner was a qualified participant in the retirement plan. The amount that had accrued in his profit-sharing account under the Friedrich Trust was credited to his account under the retirement plan.

Pursuant to the terms of the retirement plan each participant who had funds credited to his account under the Friedrich Trust was to be credited with interest at the rate of $3\frac{1}{2}$ percent, compounded annually, from January 1, 1962, "to the date of his actual retirement or to the

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

first day of the month which falls on or next precedes his termination of service." The funds credited to the participant's account under the retirement plan and the interest accruing thereon were referred to in that plan as the participant's "profit sharing account."

On March 23, 1964, American Investors Corp. purchased all of the outstanding shares of stock of the company from LTV. On March 31, 1964, the company was liquidated and thereafter was operated as the Ed Friedrich Division of American Investors Corp. All of the employees of the company, including petitioner, were retained subsequent to the liquidation, and the retirement plan was continued without change.

On December 31, 1964, American Investors Corp. was merged into AIC Corp. AIC Corp. retained all of the employees, including petitioner, of the Ed Friedrich Division subsequent to the merger and continued the retirement plan without change.

On May 14, 1965, the board of directors of AIC Corp. adopted a resolution, effective December 8, 1964, replacing the First National Bank of Dallas, Texas, as trustee of the retirement plan, and appointing as successor trustee the Southern National Bank of Houston, Texas. The name of the retirement plan was changed to the Retirement Plan for Bargaining Unit Employees of Ed Friedrich, a division of AIC Corp.

At all times relevant to this proceeding petitioner was a member of Local Union No. 780, International Union of Electrical, Radio and Machine Workers, AFL-CIO (hereinafter the union), which was the duly constituted and appointed representative of all of the bargaining unit employees of the Ed Friedrich Division.

During the course of negotiations between the union and the Ed Friedrich Division, concerning such matters as wages, hours, and working conditions, the union insisted on distribution of the entire profit-sharing accounts from the retirement plan in a lump sum, with interest at 3½ percent compounded annually from January 1, 1962, to January 1, 1965.

Despite the efforts of the board of directors and corporate officers of AIC Corp. to persuade the union not to withdraw the profit-sharing accounts, the union ultimately prevailed, and the Ed Friedrich Division agreed to distribute the accounts.

In connection with the distribution of the profit-sharing accounts, petitioner and all the other recipients executed an agreement authorizing the Southern National Bank, trustee for the retirement plan, to withhold 15 percent of the total amount distributed to each participant.

The Southern National Bank distributed in May 1965 the sum of $1,264,616.77. Petitioner's share of the total distribution was $4,507.36, from which amount $676.10 was withheld and paid to the district director.

Prior to May 1965 no distributions under the Friedrich Trust or the retirement plan had been made except when a participant retired, incurred permanent and total disability, died, or terminated his service with the company or its successors.

Petitioner and all of the other employees of the Ed Friedrich Division continued to be employed thereby subsequent to the distribution of their profit-sharing accounts. AIC Corp. amended and restated the retirement plan subsequent to the above-described distribution.

Petitioner reported the distribution of his profit-sharing account as a long-term capital gain on his amended return. Respondent determined that the distribution was taxable as ordinary income.

Section 402(a)(1)[2] provides a general rule that the amount distributed by an employee's tax-exempt trust shall be taxable to the distributee, in the year of distribution, under section 72. Petitioner has not favored us with a brief in support of his claim to an exception to this general rule. His petition alleges, however, that a "separation from the service," within the meaning of section 402(a)(2),[3] occurred in January 1961 because (1) the Friedrich family sold its stock in the company to LTV, and (2) the Friedrich Plan was terminated, in that the company, under LTV ownership, did not adopt the old plan or a comparable new one but, instead, substituted a pension plan for the profit-sharing plan.[4]

---

[2] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

  (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

    (1) GENERAL RULE.—* * * the amount actually distributed or made available to any distributee by an employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities) * * *

[3] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

  (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

    \*      \*      \*      \*      \*      \*      \*

    (2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of * * * separation from the service, * * * the amount of such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. Where such total distributions include securities of the employer corporation, there shall be excluded from such excess the net unrealized appreciation attributable to that part of the total distributions which consists of the securities of the employer corporation so distributed. The amount of such net unrealized appreciation and the resulting adjustments to basis of the securities of the employer corporation so distributed shall be determined in accordance with regulations prescribed by the Secretary or his delegate. This paragraph shall not apply to distributions paid to any distributee to the extent such distributions are attributable to contributions made on behalf of the employee while he was an employee within the meaning of section 401(c)(1).

[4] The following allegations embody the legal theory of the petition:

"It is our contention that Friedrich ceased to exist as a legal entity as of the date of its sale to Ling-Temco-Vaught [sic], this being in January of 1961, and as of this date the Employer-Employee relationship between the Friedrich Corporation and its employees ceased to exist. * * * Friedrich was not a legal entity at the date American Investors purchased Friedrich Corporation's stock from Ling-Temco-Vaught [sic]. * * *

    \*      \*      \*      \*      \*      \*      \*

"Noting: The sale between Ed Friedrich Corporations [sic] and Ling-Temco-Vaught [sic] Inc. was consummated in January of 1961, and, it was at this date the employees['] interest in the Richard H. Friedrich Profit Sharing Trust was vested, * * *"

Petitioner's claim to capital gains treatment on the distribution to him in 1965 must fail for at least two reasons: He has not shown (1) a "separation from the service," or (2) a distribution "on account of" any such separation, within the meaning of section 402(a)(2).

The parties have stipulated that petitioner, as well as the other employees, retained their employment subsequent to LTV's acquisition of the company's stock on January 2, 1961. Indeed, he continued to be employed by each of the successors of the company to the date of the trial. The law now appears to be well established that a transfer of the entire beneficial ownership of the stock of an employer-corporation, in and of itself, does not constitute a "separation from the service" within the meaning of section 402(a)(2) if the old employer continues as a separate entity and the employee continues in its service. *United States* v. *Martin*, 337 F. 2d 171 (C.A. 8, 1964); *United States* v. *Peebles*, 331 F. 2d 955 (C.A. 5, 1964); *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964); *Jack E. Schlegel*, 46 T.C. 706, 708 (1966); see also *E. N. Funkhouser*, 44 T.C. 178 (1965), aff'd. 375 F. 2d 1 (C.A. 4, 1967); *Victor S. Gittens*, 49 T.C. 419 (1968).[5] Nor do we think the rule is changed by the fact that the retirement plan was substituted for the profit-sharing plan. Cf. *Edward Joseph Glinske, Jr.*, 17 T.C. 562, 565 (1951); *Estate of Frank B. Fry*, 19 T.C. 461 (1952), affirmed per curiam 205 F. 2d 517 (C.A. 3, 1953). Thus petitioner was not separated from the service of his employer.

Moreover, even assuming that petitioner could meet the first test of section 402(a)(2), his argument would fail, for he has failed to prove that the distribution in 1965 was "on account of" his separation. To uphold petitioner on the "separation" ground we would have to find that the merger of American Investors Corp. into AIC Corp. resulted in petitioner's separation from American Investors Corp., and that the distribution was "on account of" that separation. But it is stipulated that the distribution was the result of the collective-bargaining agreement between petitioner's union and AIC Corp. Thus, the distribution was not directly related to, i.e., "*by reason of*, or *because of*, or *as a result of*, or *as a consequence of*" any hypothetical "separation." *E. N. Funkhouser, supra* at 184; see *Maurice Osterman*, 50 T.C. 970 (1968).

*Decision will be entered under Rule 50.*

---

[5] We note in passing that respondent in his brief has disavowed the "substantial change in the make-up of employees" test discussed in *Victor S. Gittens,* 49 T.C. 419 (1968), stating that it is inconsistent with the position taken in Rev. Rul. 58–94 through 58–99, 1958–1 C.B. 194–204, and Rev. Rul. 58–383, 1958–2 C.B. 149. For the reasons discussed herein, petitioner does not qualify under sec. 402(a)(2), and we do not find it necessary to apply that test to the facts presented by the present case.