STEVEN GEGAX AND MARY GEGAX, ET AL.,[1] PETITIONERS V.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 109–77, 177–77, 515–77,       Filed  November 26, 1979.
1093–77, 1436–77, 1903–77.

Steven Gegax and Mary Gegax, pro se in docket No. 109–77.
Randolph J. Smith, pro se in docket No. 177–77.
William Kelly and Penny Kelly, pro se in docket No. 515–77.
Jane Classen Davis, pro se in docket No. 1093–77.
James E. Powell, pro se in docket No. 1436–77.
Melvin L. Duus and Cecilia Duus, pro se in docket No. 1903–77.
*Virginia C. Schmid,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined deficiencies in peti-
tioners' Federal income tax for 1974 as follows:

---

[1]Cases of the following petitioners are consolidated herewith: Randolph J. Smith, docket No. 177–
77; William Kelly and Penny Kelly, docket No. 515–77; Jane Classen Davis, docket No. 1093–77; James
E. Powell, docket No. 1436–77; and Melvin L. Duus and Cecilia Duus, docket No. 1903–77.

| Petitioners | Deficiency |
|---|---|
| Steven K. Gegax and Mary F. Gegax ......... | $524.29 |
| Randolph J. Smith[2] ................................. | [2]4,342.63 |
| William T. Kelly and Penny J. Kelly ......... | 632.46 |
| Jane Classen Davis .................................. | 608.22 |
| James E. Powell ...................................... | 726.97 |
| Melvin L. Duus and Cecilia Duus ............... | 923.79 |

The sole issue[3] for our determination is whether the distributions petitioners received in November 1974 from the Meisel Employees Profit Sharing Plan (hereinafter plan) were on account of their separation from service, and, therefore, lump-sum distributions as defined in section 402(e)(4)(A),[4] entitling them to use capital gains treatment as provided by section 402(a)(2).

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

At the time they filed their petition, petitioners Steven Gegax, Mary Gegax, and James E. Powell (hereinafter Steven, Mary, and James) were residents of Dallas, Tex.; petitioner Randolph J. Smith (hereinafter Randolph) was a resident of Keller, Tex.; petitioners William Kelly, Penny Kelly, and Jane Classen Davis (hereinafter William, Penny, and Jane) were residents of Irving, Tex.; and petitioners Melvin L. Duus and Cecilia Duus (hereinafter Melvin and Cecilia) were residents of Mesquite, Tex. Steven and Mary, William and Penny, Randolph and Ida R. Smith, and Melvin and Cecilia, each timely filed a joint Federal income tax

---

[2]This deficiency was also assessed against Mr. Smith's wife, Ida R. Smith, on account of their filing a joint return. However, since Mrs. Smith failed timely to join in her husband's petition, we have no jurisdiction over her.

[3]Other issues (including petitioners' acting on respondent's agents' advice, Rev. Rul. 72–440, 1972–2 C.B. 225, being arbitrary as being inconsistently interpreted by the courts, and alleged constitutional violations of due process and equal protection under the Fifth Amendment) were originally declared in some of the petitions before the cases were consolidated. However, since these contentions were omitted from their brief, we assume that petitioners are no longer asserting these arguments here. In addition, in their reply brief, petitioners concede that, if the distribution qualifies as a lump-sum distribution, they are not entitled to the 10-year averaging, but only to capital gains, treatment for pre–1974 participation. They do not address the issue of whether their post–1973 participation (from Jan. 1, 1974, until Mar. 31, 1974) would qualify as post–1973 active participation and we, therefore, assume that they have conceded this argument, too.

Respondent concedes that should we determine that a separation from service occurred and that petitioners are entitled to lump-sum distribution treatment, the amounts received would qualify for capital gains treatment under sec. 402(a)(2).

Concessions have also been made on other items not at issue here.

[4]All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue, unless otherwise stated.

return for 1974. James and Jane each timely filed an individual Federal income tax return for 1974.[5]

Mary, Randolph, William, Jane, James, and Melvin were employees of Meisel Photochrome Corp. (hereinafter Meisel), a Texas corporation, prior to and on May 17, 1974.

On May 17, 1974, the shareholders of Meisel voted to amend its articles of incorporation to change the corporation's name to OWJ Photo Corp. (hereinafter OWJ). The shareholders of OWJ, on that same day, voted to transfer substantially all of OWJ's assets to Reuben H. Donnelley Corp. (hereinafter Donnelley), a subsidiary of Dun & Bradstreet Cos., Inc. (hereinafter D & B) in exchange for 357,000 shares of D & B common stock. This transaction was intended to comply with section 368(a)(1)(C).

Pursuant to this vote, on or about May 17, 1974, OWJ's assets were transferred to Donnelley and, on or about May 19, 1974, the D & B common stock was transferred to OWJ. Afterwards, OWJ held as assets only the D & B common stock and the trust created by the plan.

The record does not include a copy of the plan. However, petitioners have submitted, without objection from respondent, a copy of page 53 of the Meisel Proxy Statement (hereinafter proxy statement),[6] which describes the plan as follows:

Meisel maintains a qualified, non-contributory deferred profit sharing plan (the "Profit Sharing Plan") for full-time employees. Under the Profit Sharing Plan the amount of annual contribution to the trust fund is 20% of the net profits before deducting such annual contribution and before income taxes, as defined in the Profit Sharing Plan, plus any additional amount authorized by the Board of Directors; provided, annual contributions may not exceed 15% of the annual compensation paid to all participating employees. The Board of Directors has established a policy limiting annual contributions to 20% of applicable net profits. Contributions are allocated to the account of each participant on the basis of his compensation. If a participant's employment is terminated because of death, total and permanent disability or retirement upon attaining the age of 65, he is entitled to 100% of the amount credited to his account. If a participant's employment is terminated for any reason other

---

[5]Petitioners requested us to find that all the returns were filed with the District Director of Internal Revenue at Dallas, Tex. Although not objecting to our making this finding, respondent noted that normally petitioners' returns would have been filed with the Internal Revenue Service Center at Austin, Tex. In addition, Randolph J. Smith's amended petition indicates that his return was filed with the Office of the Internal Revenue at Austin, Tex. Because of this discrepancy, we find only that Randolph J. Smith's return was filed with the Internal Revenue Service Center at Austin, Tex., but make no finding with respect to where the remainder of the petitioners' returns were filed.

[6]This proxy statement was mailed to Meisel's shareholders on May 1, 1974, in connection with the meeting on May 17, 1974, and the vote on the proposed type C reorganization.

than death, total and permanent disability or retirement upon attaining the age of 65 prior to his completing two full years of service with Meisel, then the entire amount credited to his account is left in the trust fund and redistributed among the other participants. If a participant's employment with Meisel is terminated after completing two full years of service, he will receive 20% of the amount credited to his account and, for each additional year of his service thereafter, he becomes entitled to an additional 10% of his account balance. The Profit Sharing Plan is terminable at the option of the Board of Directors, but contributions, once made, are irrevocable. The contributions by Meisel to the Profit Sharing Plan for the fiscal year ended March 31, 1973 totaled approximately $411,000, and it is anticipated that the total contributions for the fiscal year ending March 31, 1974 will be approximately $370,000. Contributions from Meisel pursuant to the Profit Sharing Plan are placed in the Employees Profit Sharing Trust. Exchange Bank & Trust Company, Dallas, Texas is the Trustee and the employees of Meisel are the beneficiaries of such Trust. The Trustee purchases, sells and invests the assets of such Trust; from time to time is directed to invest assets of such Trust by the Profit Sharing Committee (see "Principal Shareholders" above); and makes distributions to terminating participants in accordance with the Profit Sharing Plan.

The trust was qualified under section 401(a), exempt from tax under section 501(a), and fully vested.

Meisel ceased making contributions to the trust on March 31, 1974, and Donnelley assumed no obligations under the plan. In this regard, the proxy statement said:

It is contemplated that upon the Closing under the Acquisition Agreement the Profit Sharing Plan and the Stock Purchase Plan will be terminated effective as of April 1, 1974. These Plans and Meisel's other employee benefits will be replaced with a new employee benefit program which will have approximately the same financial effect on Meisel as the existing employee benefit program.

The proxy statement also affirmed:

Upon consummation of the transaction, the business of Meisel will be operated by a wholly-owned subsidiary of Donnelley, and it is Dun & Bradstreet's present intention to operate said business under the same name in substantially the same manner as in the past. It is anticipated that the present employees of Meisel will be retained. * * *

On or about May 19, 1974, Donnelley transferred the OWJ assets to a newly created Delaware corporation, Meisel Photochrome Corp. (hereinafter Meisel/Donnelley). The employees of OWJ thereupon became the employees of Meisel/Donnelley, and their benefits under the plan were replaced with benefits afforded by an employee benefit plan offered by Meisel/Donnelley.

In November 1974, OWJ distributed all of the plan's assets to the beneficiaries, including petitioners, in return for the release of each recipient's rights in the plan. Petitioners received a distribution consisting of his or her vested account balance as of March 31, 1974, plus a pro rata portion of all forfeitures then in existence. On or about the same day, OWJ was liquidated.

Distributions from the plan to petitioners were as follows:

| Petitioner | Distribution | Petitioner | Distribution |
|---|---|---|---|
| Mary | $2,685.52 | Jane | $3,538.87 |
| Randolph | 16,945.15 | James | 4,370.77 |
| William | 3,594.86 | Melvin | 7,380.35 |

Petitioners reported their distributions on Form 4972, Special 10-Year Averaging Method, which computes the tax on the distribution from a profit-sharing plan based on a 10-year income averaging method.

Section 402(a)(2)[7] allows capital gains treatment for lump-sum distributions attributable to pre–1974 active participation in an employee trust described in section 401(a), which is exempt from tax under section 501(a). "Lump sum distribution" as defined by section 402(e)(4)(A)[8] includes amounts paid on account of the employee's "separation from the service" of his employer. See *Glinske v. Commissioner*, 17 T.C. 562 (1951).

Respondent contends that petitioners were not "separated from service" as they had not resigned, retired, or been

_____

[7]Sec. 402(a)(2) provides in pertinent part:

In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount (as defined in subparagraph (D) of subsection (e)(4)) of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction—

(A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and

(B) the denominator of which is the number of calendar years of active participation by the employee in such plan,

shall be treated as a gain from the sale or exchange of a capital asset held for more than 6 months [9 months for taxable years beginning in 1977; 1 year for taxable years beginning after December 31, 1977]. * * *

[8]Sec. 402(e)(4)(A) provides in pertinent part:

For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient.—

(i) on account of the employee's death,

(ii) after the employee attains age 59½,

(iii) on account of the employee's separation from the service, or

(iv) after the employee has become disabled * * *

discharged from the employment of OWJ. Respondent maintains, moreover, that the distributions were made "on account of" the termination of the plan and, therefore, were not lump-sum distributions.

Petitioners, by contrast, contend that they were separated from the service of OWJ and received distributions from the plan on account of that separation.

We agree with respondent to the extent that we find that there was no separation from service here. Meisel/Donnelley was created to continue the same business of OWJ, formerly Meisel, under the same name but incorporated in a different State. Petitioners, like the other employees of Meisel/Donnelley, were employed in the same capacity before and after the reorganization.

It is well established that a separation from service requires more than the mere transfer of stock ownership and control. *United States v. Johnson*, 331 F.2d 943 (5th Cir. 1964); *United States v. Martin*, 337 F.2d 171 (8th Cir. 1964); *Oliphint v. Commissioner*, 24 T.C. 744 (1955), affd. per curiam 234 F.2d 699 (5th Cir. 1956); *Stewart v. Commissioner*, 53 T.C. 344 (1969); *Gittens v. Commissioner*, 49 T.C. 419 (1968). There is a conflict, however, about exactly what other factors must be present to constitute the requisite separation. Adopting Judge Wisdom's interpretation in *United States v. Johnson, supra,* of the legislative history of section 402 and relevant case law, this Court has held that a separation from service requires a substantial change in the makeup of employees. *Gittens v. Commissioner, supra.* Accord, *United States v. Haggart*, 410 F.2d 449 (8th Cir. 1969). Contra, *Smith v. United States*, 460 F.2d 1005 (6th Cir. 1972) (adopting the interpretation in Judge Tannenwald's concurring opinion in *Gittens v. Commissioner, supra)*; *Holstein v. United States*, an unreported case (E.D. Mich. 1976, 38 AFTR 2d 76–5246, 76–1 USTC par. 9464).[9]

---

[9]In a recent Memorandum Opinion of this Court, *Enright v. Commissioner*, T.C. Memo. 1976–393, we adhered to the necessity of this requirement.

Before he issued Rev. Rul 72–440, 1972–2 C.B. 225, respondent conceded the issue of "separation from service" in such cases as *Houg v. Commissioner*, 54 T.C. 792 (1970), and *Stewart v. Commissioner*, 53 T.C. 344 (1969). We, therefore, did not base those holdings on a determination of this issue. In the 1972 ruling, respondent stated his new position, motivated by the decisions in *United States v. Johnson*, 331 F.2d 943 (5th Cir. 1964), *United States v. Haggart*, 410 F.2d 449 (8th Cir. 1969), and *Gittens v. Commissioner*, 49 T.C. 419 (1968), that separation from service was effected only by an employee's "death, retirement, resignation, or discharge, and not when he continues on the same job for a different employer as a result of the liquidation, merger, consolidation, etc. of his former

Since all of the employees of OWJ became employees of Meisel/Donnelley, we find that there was no substantial change in the makeup of employees and, hence, no separation from service.

Petitioners urge us to reconsider our position in light of the change made to section 402(e) with the enactment of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, 88 Stat. 829. Section 2005(a) of ERISA omits the provision whereby distributions from the termination of a plan incident to a liquidation occurring in 1954 are specifically to be considered distributions from a separation from service.[10] Petitioners would have us interpret this change, without any congressional comment, to indicate that Congress was no longer restricting the finding of liquidations or mergers as separations from service to only those liquidations occurring in 1954. Respondent, on the other hand, contends that the 1954 savings provision was eliminated as deadwood.

Unfortunately for petitioners, it is difficult for us to glean from congressional silence what would be a significant departure from much case law. Respondent's inference, rather, is more probable.

As we have found that petitioners were not separated from the service of their employer, we need not consider respondent's other contention that the distributions petitioners received were not on account of any separation from service, but because of the termination of the plan.

---

employer." Rev. Rul. 72–440, 1972–2 C.B. 225, 226.

There is further conflict on whether our decisions in *Miller v. Commissioner*, 22 T.C. 293 (1954), affd. per curiam 226 F.2d 618 (6th Cir. 1955), and in *Martin v. Commissioner*, 26 T.C. 100 (1956), have been abrogated by the 1954 Internal Revenue Code, although the majority of this Court has so held. *Gittens v. Commissioner*, *supra*. But see *Gittens v. Commissioner*, *supra* (Judge Featherston concurring); *Houg v. Commissioner*, *supra*; *Schlegel v. Commissioner*, 46 T.C. 706 (1966).

[10]Prior to the amendment, sec. 402(e) read as follows:

(e) CERTAIN PLAN TERMINATIONS.—For purposes of subsection (a)(2), distributions made after December 31, 1953, and before January 1, 1955, as a result of the complete termination of a stock bonus, pension, or profit-sharing plan of an employer which is a corporation, if the termination of the plan is incident to the complete liquidation, occurring before the date of enactment of this title, of the corporation, whether or not such liquidation is incident to a reorganization as defined in section 368(a), shall be considered to be distributions on account of separation from service.

Due to concessions not at issue here,

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

TANNENWALD, *J.*, dissenting: In the instant case, there was a change of employer (from OWJ to Meisel/ Donnelly) and a change in ownership of the business through the sale by OWJ of substantially all of its assets to Donnelley. In my opinion, these factors are sufficient to enable the petitioner to obtain capital gains treatment under section 402(a)(2); I do not agree with the majority that the phrase "separation from the service" requires a substantial change in the makeup of the employee group. My reasons for this position are set forth in my concurring opinion in *Gittens v. Commissioner*, 49 T.C. 419, 427–430 (1968). Nothing has developed since that time to cause me to change my views. Indeed, my rationale has been adopted in *Smith v. United States*, 460 F.2d 1005 (6th Cir. 1972). Although there was a change of corporate employer in *United States v. Haggart*, 410 F.2d 449 (8th Cir. 1969), cited by the majority, both the transferor and transferee corporations had common ownership (see 410 F.2d at 450), and that case is distinguishable. With respect to *United States v. Johnson*, 331 F.2d 943 (5th Cir. 1964), as I pointed out in my concurring opinion in *Gittens* (see 49 T.C. at 429), the taxpayer remained an employee of the same entity after the transfer of ownership; in fact, he was such an employee at the time the distribution to him was made.[1] That case is therefore distinguishable on its facts. Consequently, although the rationale of the Fifth Circuit Court of Appeals (to which an appeal herein would lie) is broad and consistent with that of the majority opinion herein, I do not consider that the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971), is applicable.

---

[1]See also *United States v. Martin*, 337 F.2d 171 (8th Cir. 1964), involving the taxability of distributions to another participant in the same plan as was involved in *Johnson*.