ROBERT L. DEVINASPRE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Devinaspre v. Commissioner
Docket No. 11393-84.
United States Tax Court
T.C. Memo 1985-435; 1985 Tax Ct. Memo LEXIS 194; 50 T.C.M. (CCH) 846; T.C.M. (RIA) 85435; 6 Employee Benefits Cas. (BNA) 2156; August 20, 1985. Fred Ramey, for the petitioner. Christine v. Olsen and John Meaney, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $270 in petitioner's Federal income tax for 1980. The issues for decision are: 1. Whether petitioner is entitled to *197 a deduction under section 219(a)(1)[1] for a contribution to an Individual Retirement Account; 2. Whether petitioner may exclude from income under section 402(a)(5) the rollover portion of a distribution from a qualified plan; and 3. Whether petitioner is liable for an excise tax under section 4973 attributable to an excess contribution to an Individual Retirement Account. All of the facts are stipulated. 1. Stipulated Facts
Petitioner Robert L. Devinaspre, a single individual, resided in Boise, Idaho, at the time he filed the petition. He filed a Federal income tax return for 1980 with the Internal Revenue Service Center, Ogden, Utah. Petitioner commenced employment as a technician in the respiratory therapy department of Boise Anesthesia, P.A., an Idaho corporation, on April 17, 1977. Petitioner participated in both qualified retirement plans [2] maintained by his employer, the Boise Anesthesia, P.A., Profit Sharing Plan and the Boise Anesthesia, P.A., Money Purchase Pension Plan *198 and Trust Agreement (the Boise plans). During 1980, Boise Anesthesia, P.A., was reorganized into a partnership of professional corporations (Boise Anesthesia), which continued to maintain the Boise plans. On September 1, 1980, the employees of the Boise Anesthesia respiratory thereapy department, which included petitioner, were terminated as employees of Boise Anesthesia, and, pursuant to an agreement, became employees of St. Alphonsus Hospital (the hospital). Pursuant to the employee transfer, neither Boise Anesthesia nor the hospital transferred any assets, stock, or other consideration. Neither entity assumed liabilities of the other, nor owned any interest in the other before or after the transfer. No person owning an interest in Boise Anesthesia has at any time owned an interest in the hospital. The entities did not merge or consolidate. Boise Anesthesia did not liquidate any portion of its business pursuant to the employee transfer, but continued its business as a medical practice of anesthesiology. Under the terms of the transfer, the employees were *199 to receive the same pay and benefits from the hospital as they had been receiving at Boise Anesthesia. The hospital employed petitioner under the same job title with virtually no change in his duties. Petitioner participated in no retirement plan at the hospital in 1980, and petitioner was no longer a participant in the Boise plans after September 1, 1980. Petitioner participated in no retirement plan other than the Boise plans during 1980. Boise Anesthesia distributed and paid $1,443.98 to petitioner in 1980 as his accumulated benefits in the Boise plans. Within 60 days after he received the Boise plan distribution, petitioner established an Individual Retirement Account (IRA) and contributed $1,000 to the account. Petitioner included the entire distribution in income on his 1980 incom tax return and claimed $1,000 as an adjustment to income for a contribution to an IRA. Respondent examined the Form 5500 Series--Annual Return/Report of Employee Benefit Plan filed by Boise Anesthesia for years ended September 1981 and September 1982. Respondent concluded that a partial termination had occurred in 1980 with respect to the Boise plans when petitioner and other employees were *200 terminated from plan participation on September 1, 1980. Pursuant to respondent's findings, additional distributions from the Boise plans were made to petitioner and other participants to reflect the required 100-percent vesting upon termination. Respondent disallowed the deduction for a contribution to an IRA and assessed an excise tax on the excess contribution. 2. Deduction of Contribution to IRA
Section 219(a)(1) provides a deduction for amounts paid to an IRA. [3] However, under the law in effect in 1980, a taxpayer may not deduct payments to an IRA for a taxable year during which he was an active participant in a qualified plan. Sec. 219(b)(2)(A)(i). [4] Respondent argues that petitioner was not entitled to deduct his $1,000 contribution to an IRA because he was an active participant in a qualified pension plan during part of 1980. [5] "Active participant" is defined in the regulations as follows: An individual is an active participant in a money purchase plan if under the terms of *201 the plan employer contributions must be allocated to the individual's account with respect to the plan year ending with or within the individual's taxable year. * * * [Sec. 1.219-2(c), Income Tax Regs.] An individual is an active participant in * * * [profit sharing and stock bonus] plans in a taxable year if a forfeiture is allocated to his account as of a date in such taxable year * * * [or] if an employer contribution is added to the participant's account in such taxable year. * * * [Sec. 1.219-2(d)(1), Income Tax Regs.] *202 Petitioner has offered no evidence to refute the argument that he was an active participant in a qualified plan during 1980. In fact, he admits his participation in the Boise plans during that first 8 months of 1980 as stipulated: Petitioner was no longer participant in the Boise Anesthesia Retirement Plans * * * after September 1, 1980 [and] [p]etitioner was not a participant in 1980 in any other retirement plans, other than the Boise Anesthesia plans * * *, which participation was terminated on September 1, 1980 * * *. Accordingly, petitioner is not entitled to a section 219(a)(1) deduction, and we do not understand that he seriously contends otherwise. 3. Exclusion for Rollover Distribution
Section 402(a)(5) provides that if the balance to the credit of an employee in a qualified plan is paid to him in a "qualifying rollover distriution," and he transfers any portion of the distribution to an eligible retirement plan [6] within 60 days after receiving the distribution, then the distribution, to the extent so transferred, is not includible in gross income for the taxable *203 year in which paid. The term "qualifying rollover distribution" is defined in section 402(a)(5)(D)(i), in the form applicable to the tax year in dispute, to mean one or more distributions: (I) within 1 taxable year of the employee on account of a termination of the plan of which the trust is a part or, in the case of a profit-sharing or stock bonus plan, a complete discontinuance of contributions under such plan, or (II) which constitute a lump sum distribution within the meaning of subsection (e)(4)(A) * * *. The parties have focused mainly on the issue as to whether the $1,000 received by petitioner and contributed to his IRA was a "lump sum distribution within the meaning of section 402(e)(4)(A)" under subparagraph II, above. [7]Section 402(e)(4)(A) defines the term "lump sum distribution" to mean the "distribution or payment within one taxable year of the recipient of the balance to the credit for the employee" which becomes payable to the recipient "on account *204 of the employee's separation from the service." [8]
*205 Petitioner contends that he was separated from the service of Boise Anesthesia when he became an employee of the hospital. Relying upon the following excerpt from S. Rept. No. 1622, 83d Cong; 2d Sess. 54, 3 U.S. Code & Adm. News 4621, 4685-4686 (1954), which accompanied the enactment of the 1954 Code, respondent argues that petitioner was not separtated from the service of Boise Anesthesia because he continued to do the same work for this hospital: The House Bill extends capital gains treatment to lump-sum distributions to employees at the termination of a plan because of a complete liquidation of the business of the employer, such as a statutory merger, even though there is no separation from service. This was intended to cover, for example, the situation arising when a firm with a pension plan merges with another firm without a plan, and in the merger the pension plan of the first corporation is terminated. Your committee's bill revises this provision of the House bill to eliminate the possibility that reorganizations which do not involve a substantial change in the make-up of employees might be arranged merely to take advantage of capital gains provision. * * * Respondent *206 argues that this language demonstrates that "Congress intended to confirm that 'separation from service' did not occur when an employee continued on the same job, regardless of the circumstances." The general rule to be applied where an employee at the termination of a plan continues employment for an employer that survives a reorganization, such as a merger, described in S. Rept. 1622, supra, has been stated in Johnson v. United States,331 F.2d 943, 949 (5th Cir. 1964), as follows: [A]fter 1954 distributions will not qualify for capital gain treatment if they are made as a result of the termination of a plan incident to a corporate reorganization, even if the corporate employer is completely liquidated. * * * In other words, after 1954 a separation from service would occur only on the employee's death, retirement, resignation, or discharge; not when he continues on the same job for a different employer as a result of a liquidation, merger or consolidation of his former employer. See also United States v. Haggart,410 F.2d 449, 452 (8th Cir. 1969); Gitens v. Commissioner,49 T.C. 419, 423-424 (1968); Gegax v. Commissioner,73 T.C. 329, 334 (1979); *207 cf. Smith v. United States,460 F.2d 1005, 1014-1015 (6th Cir. 1972). But we are not here dealing with a liquidation, merger, or consolidation of an employer for which the employee continued to work. As more fully described above, the agreement between Boise Anesthesia and the hospital provided for no asset transfer, exchange of stock, assumption of liabilities, or other consideration for the employee transfer.Neither entity owned an interest in the other before or after the transfer. The entities had no common ownership and did not merge or consolidate pursuant to the transfer. Boise Anesthesia did not liquidate but continued its business as a medical practice of anesthesiology. Thus, the employee transfer from Boise Anesthesia in no way resembled a corporate reorganization or restructuring. In fact, the stipulated facts show that the only connection between the entities was the transfer of the respiratory therapy department employees from one employer, Boise Anesthesia, to another employer, the hospital. Thus, respondent's reorganization-consolidation-liquidation argument, based on the excerpt from S. Rept. No. 1622, supra, is inapposite. Petitioner *208 was separated from the service of Boise Anesthesia in the same manner, for all practical purposes, as if he had been formally discharged. His employment with Boise Anesthesia was terminated even though he was immediately employed by the hospital to perform substantially the same duties as before. Therefore, the distribution he received was a qualifying rollover distribution under section 402(a)(5)(D)(i)(II), and the portion rolled over into the IRA was excludable from income under section 402(a)(5)(A). Having concluded that petitioner was separated from the service of Boise Anesthesia, we need not decide whether, notwithstanding the stipulation that no assets were transferred, the transfer of Boise Anesthesia's respiratory therapy department to the hospital constituted a termination of the plan as to petitioner under section 402(a)(5)(D)(i)(I) which encompasses a sale or other transfer of assets under section 402(a)(6)(B)(ii). See H. Rept. No. 94-1020, 1979-1 C.B. 529, 530. 4. Excise Tax on Excess Contribution
Section 4973 provides for a 6-percent excise tax on excess contributions to an IRA over deductions allowable under section 219 for such contributions. *209 [9] However, for purposes of the excise tax provision, the amount contributed does not include a rollower contribution under section 402(a)(5). Sec. 4973(b)(1)(A). *210 We concluded, supra, that petitioner's $1,000 contribution to an IRA in 1980 qualified as a rollover contribution under section 402(a)(5). Therefore, petitioner made no excess contributions in 1980, and no excise tax is due. To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. Qualified plan means an employee's trust described in sec. 401(a) and exempt from taxation under sec. 501(a).↩
3. SEC. 219. RETIREMENT SAVINGS. (a) Deduction Allowed.--In the case of an individual, there is allowed as a deduction amounts paid in cash for the taxable year by or on behalf of such individual for his benefit-- (1) to an individual retirement account described in section 408(a)↩ * * * 4. Sec. 219↩ has subsequently been amended by sec. 311(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 274, to allow a deduction for contributions to an IRA irrespective of participation in a qualified plan. The amendment is effective for taxable years beginning after Dec. 31, 1981.
5. Orzechowski v. Commissioner,69 T.C. 750, 756 (1978), affd. 592 F.2d 677 (2d Cir. 1979); Hildebrand v. Commissioner,683 F.2d 57, 59 (3d Cir. 1982), affg. a memorandum Opinion of this Court; Horvath v. Commissioner,78 T.C. 86, 92 (1982); but see Foulkes v. Commissioner,638 F.2d 1105, 1109-1110 (7th Cir. 1981), revg. a Memorandum Opinion of this Court (no potential for double tax benefit). Petitioner argues that these cases are distinguishable because none of them involves a distribution from a retirement plan followed by a rollover contribution to an IRA. However, the Code provision (sec. 402(a)(5)↩) which deals with rollover contributions refers to an exclusion from income rather than a deduction.
6. The term "eligible retirement plan" includes an individual retirement account (IRA). Sec. 402(a)(5)(D)(iv)(I)↩.
7. The portion of a lump sum distribution not rolled over is not eligible for favorable tax treatment under sec. 402(a)(2) (capital gains) or sec. 402(e)(1), (3) (separate tax on lump sum distributions and deduction from gross income), but is taxes as ordinary personal service income in the year of receipt. Sec. 402(a)(6)(C); S. Rept. No. 95-1127, 1978-2 C.B. 369↩, 373. Accordingly, petitioner included in his gross income for 1980 the portion of his distribution not rolled over into the IRA. 8. The language of sec. 402(e)(4)(A) contemplates that the balance to the credit of the employee will be distributed within one taxable year. The stipulated facts, summarized above, indicate that a further distribution was made to petitioner after Sept 1, 1982, as a result of the IRS' examination of Boise Anesthesia's Form 5500. Respondent has not raised this point. Sec. 11.402(e)(4)(A)-1(b), Temporary Regs., however, permits an employee to "assume that a distribution is a lump sum distribution even though part of the balance of his account has not been forfeited at the time the distribution is made" and to "roll the distribution over as a contribution to an individual retirement account pursuant to section 402(a)(5) or 403(a)(4)." An adjustment may then be made for the year in which it is determined that the remaining amount will not be forfeited. Furthermore, respondent, in his letter to the Plan Administrator of Boise Anesthesia, concluded that a partial termination occurred when the employees were transferred and improper forfeitures were made at that time. Sec. 11.402(e)(4)(A)-1(a), Temporary Regs.↩, provides that an "employeehs balance does not include any amount which is forfeited under the plan (even though the amount may be reinstated) as of the close of the taxable year of the recipient in which the distribution is made."
9. SEC. 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS (a) Tax Imposed.--In the case of-- (1) an individual retirement account (within the meaning of section 408(a)), * * * * * * there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's accounts, annuities, or bonds (determined as of the close of the taxable year). * * * (b) Excess Contributions.--For purposes of this section, in the case of individual retirement accounts, individual retirement annuities, or bonds, the term "excess contributions" means the sum of-- (1) the excess (if any) of-- (A) the amount contributed for the taxable year to the accounts or for the annuities or bonds (other than a rollover contribution described in sections 402(a)(5), 402(a)(7), 403(a)(4), 403(b)(8), 408(d)(3), and 409(b)(3)(C)), over (B) the amount allowable as a deduction under section 219 or 220↩ for such contributions * * *