Charlene **MILLER** and Charles L. Miller, Plaintiffs,

v.

**UNITED STATES of America,** Defendants.

No. MO–87–CA–67.

United States District Court, W.D. Texas, Midland–Odessa Division.

Dec. 7, 1987.

Michael Dale Cropper, Boyd, Sanders, Wade, et al., Midland, Tex., for plaintiffs.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Christopher S. Cole, Dept. of Justice, Tax Div., Dallas, Tex., for defendants.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BUNTON, Chief Judge.

On this day came on before the Court Cross Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After reviewing the Motions, Briefs, Responses, exhibits, affidavits of the parties and applicable law, the Court finds that there is no genuine issue as to any material fact and that Defendant is entitled, as a matter of law, to a Judgment against Plaintiffs CHARLENE MILLER and CHARLES L. MILLER.

This is a refund action by Charles L. and Charlene Miller for taxes allegedly erroneously assessed against them based on a distribution from a pension plan. The First National Bank of Midland established a

---

pension plan effective January 1, 1963. Until October 14, 1983, First National Bank was the sponsor of the pension plan, and its Trust Department served as trustee of the pension plan.

On October 14, 1983, the Office of the Comptroller of the Currency declared First National Bank of Midland insolvent and pursuant to Federal Statute, appointed the Federal Deposit Insurance Corporation as receiver. Pursuant to a purchase and assumption agreement dated October 14, 1983, between the FDIC and First Republic National Bank, First Republic purchased many of First National Bank's assets and assumed a portion of its liabilities. Republic Bank, however, declined to assume a portion of its liabilities. It specifically declined to assume sponsorship or trusteeship of the pension plan. Consequently, the FDIC terminated the pension plan as of October 14, 1983. For the purposes of opening of Republic Bank for business on October 17, 1983, Republic Bank hired all of First National's active employees as of October 17, 1983. Most of these employees held the same positions and performed the same duties for Republic Bank as they did for First National Bank. However, the shareholders, directors and officers of Republic Bank were not the same as those of First National Bank.

Charlene Miller was an employee of First National Bank of Midland from September 6, 1966, until the Bank became Republic Bank. Once Republic Bank assumed control of the assets of First National, Charlene Miller became an employee of Republic Bank and continued in the same duties, in the same location, with the same responsibilities she had while working for First National Bank. Charlene Miller participated in the pension plan controlled by First National Bank. When that plan was retroactively terminated by the FDIC in October of 1983, she eventually received a distribution of $40,921.31 in 1985 representing the final payment of the entire balance of her pension.

The summary judgment proof shows that all participants received information about the tax consequences of the distribution. [In fact a letter was sent to each participant which warns them about the situation the plaintiffs are currently involved with.] One of the options available to the Millers was the ability to roll the distribution over into an I.R.A. account and thus avoid being taxed currently on the money. The Court finds Plaintiffs were informed of this option. They did not elect that option, rather the Millers elected to receive the funds and dispose of them in other ways.

Charlene and Charles Miller timely filed a joint tax return for the 1985 tax year reporting the distribution as ordinary income. On March 17, 1987, Charlene and Charles L. Miller filed this action alleging that they erroneously reported the distribution as ordinary income on their tax return and further alleging that they are entitled to capital gains treatment on their distribution.

The issue before this Court, is whether Charlene Miller was separated from service within the meaning of Section 402(e)(4)(A)(iii) so as to qualify for preferential capital gains treatment?

The Eighth Circuit in *United States v. William L. Haggart*, 410 F.2d 449 (8th Cir.1969) addressed a similar question involving a corporation whose assets were transferred to another corporation in exchange for stock which was distributed to the transferor's stockholders including the taxpayer and the transferor was dissolved. Distribution to the taxpayer of his interest in a profit sharing trust was held by the Court not to qualify for preferential capital gains treatment. The Court, in discussing the issue, held that the termination of a plan incident to a corporate reorganization, even if the corporate employer completely liquidated does not entitle the taxpayer to capital gains treatment. The Court held there is no substantial change in the make-up of the employees, there is only a technical change in the employment relationship, and there was no meaningful change in the beneficial ownership in the business." *Id.* at 452.

The Fifth Circuit has also addressed this issue. In *United States v. Johnson*, 331 F.2d 943 (5th Cir.1964) the Court stated:

"In other words, after 1954 a separation from service would occur only on the employee's death, retirement, resignation, or discharge; not when he continues on the same job for a different employer as a result of a liquidation, merger or consolidation of his former employer." Id at 949.

In the case at point, when the First National Bank of Midland shut its doors on Friday, FDIC opened the doors Saturday morning, all employees were present for duty. When First Republic National Bank opened the doors as the new operators on Monday morning, all employees were present for duty with the exception of upper management. All buildings physically occupied by First National personnel were occupied by Republic Bank and the same fixtures were retained (except the items needed by FDIC to complete their business). The majority of the employees had the same jobs and duties before the takeover as after. Charlene Miller has admitted that her duties, responsibilities, and location did not change when the Bank was sold.

Plaintiffs assert that the *Johnson* rationale should not be extended to employees such as Charlene Miller who survived the failure of the First National Bank on the grounds that: (1) there was in fact a complete liquidation of the First National Bank of Midland (2) there was totally new share ownership of Republic Bank with new directors and (3) there were substantive changes in the number of employees by the end of December, 1983. Moreover, Plaintiff contends that, at the end of December, 1983, many of the employees still employed by Republic Bank were performing FDIC duties. The Court finds Plaintiffs' argument without merit. See Revenue Ruling 709–336. Revenue Ruling 79–336 held that when an employee follows a transfer of assets of a business to a new employer, no matter what the form takes, there is no separation from service unless the employee either *immediately* takes on new responsibilities from the new employer or actually separates from service by going to work for an unrelated business.

In the instant case, when the bank was sold there was no substantial change in the makeup of employees, there was only a technical change in the employment relationship. Moreover, Plaintiff's duties, responsibilities and location did not change when the Bank was sold. Accordingly, the Court finds Plaintiff was not separated from service within the meaning of Section 402(e)(4)(A)(iii).

Based upon the foregoing, IT IS ORDERED, ADJUDGED and DECREED that the Defendant UNITED STATES OF AMERICA'S Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Plaintiffs Motion for Summary Judgment is in all things DENIED.